[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11025
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cv-00101-WHA-TFM


CALVIN LEON MASSEY,

Plaintiff-Appellant,

versus

MONTGOMERY COUNTY DETENTION FACILITY,

Defendant,

QUALITY CORRECTIONAL HEALTH CARE,
NURSE BARFIELD,
DR. GURLEY,

Defendants-Appellees.

_____

D.C Docket No. 2:12-cv-00526-WHA-TMH

CALVIN LEON MASSEY,

Plaintiff-Appellant,

versus

TATUM MCARTHUR,
Doctor, in his individual and official capacities,
SHARON THOMPSON,
Nurse, in her individual and official capacities,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(March 24, 2016)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Calvin Massey, an Alabama prisoner proceeding pro se, charges that

Qualified Correctional Health Care (QCHC) and some of its employees were

deliberately indifferent to his medical needs in violation of his civil rights. To

succeed on such a claim, he must do more than show that the defendants ought to

have given him better medical care. He must show that the defendants knew of an

excessive risk to his safety and knowingly disregarded it. Because Massey has, at

most, raised the possibility that the defendants should have given him better

medical care, he has failed to establish that any of the defendants in this case were

deliberately indifferent to his medical needs in violation of his constitutional rights.

Massey has been incarcerated at the Montgomery County Detention Center

(the Center) since 2010. Alabama pays QCHC to provide medical care to the

2

inmates at the Center.  On October 2, 2011, Massey signed up for a sick call because he was not feeling well and had a cough, congestion, and headaches. Nurse Kimberly Barefield examined him on October 4 and prescribed him four days' worth of Tylenol and cough medicine, consistent with nursing protocol for those symptoms.  On October 7, Massey registered for another sick call because he did not feel the medications were working.  The next day, he saw nurse Sharon Thompson and told her he still had all the symptoms he had complained of to Barefield.  She told him that she could not prescribe anything more than what Barefield had and explained that he would have to be seen by a doctor.  Thompson made a note on Massey's sick call slip that he wanted to see a doctor and Massey signed the slip, affirming that it reflected his wishes.

He saw Dr. Jerry Gurley on October 10.  Gurley prescribed antibiotics for Massey and ordered a chest x-ray to be taken the next day.  On October 12, Dr. Tatum McArthur interpreted the x-ray and passed the results along to Gurley, who concluded that Massey had pneumonia and a partially collapsed lung.  On October 13, as Massey's condition worsened, he was admitted to the Center's infirmary. When things got still worse that day, he was transported to Jackson Hospital, where staff put him on an IV after assessing him as having pneumonia with a high risk of respiratory failure.  After Massey's condition stabilized, he was returned to the Center on October 25.  Two days later, Gurley administered a tuberculosis test,

3

which came back positive on October 30.  After seeing the results, he moved Massey to a negative pressure cell in the infirmary and immediately began administering medication for the tuberculosis.  QCHC notified the Alabama Department of Public Health, which initiated a tuberculosis protocol and distributed medication to staff members.  According to Gurley's undisputed testimony, there had been no known cases of tuberculosis at the Center in three years.

In 2012, Massey filed two lawsuits in federal district court alleging deprivations of his civil rights in violation of 42 U.S.C. § 1983.  The complaint in the first lawsuit alleged that Gurley's and Barefield's failures to timely and effectively diagnose and treat Massey's ailments constituted deliberate indifference to his serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments.  QCHC was liable for the same thing, according to the complaint, because it employed Barefield and Gurley.  The complaint also alleged that QCHC, Gurley, and Barefield were all responsible for failing to remedy the poor health conditions at the Center that had led to Massey's contracting tuberculosis.  By permitting those conditions to persist, Massey charged, QCHC, Gurley, and Barefield had violated his Eighth and Fourteenth Amendment rights.

QCHC, Gurley, and Barefield filed an answer and a special report supported by sworn statements and other evidence.  The district court construed the special

4

report as a motion for summary judgment and allowed Massey to respond with affidavits and other evidence of his own. While that was going on, Massey sought permission to join McArthur and Thompson as parties to his complaint. The district court denied that request, so Massey filed a second complaint alleging that McArthur and Thompson had also failed to respond appropriately to Massey's ailments, and that their failure to do so also amounted to deliberate indifference. The district court ordered McArthur and Thompson to file a written report in response to Massey's complaint. Before they did so, however, the district court consolidated Massey's two cases and referred them to a magistrate judge, who issued a report recommending that the district court dismiss the complaint against McArthur and Thompson, grant summary judgment to Barefield, Gurley, and QCHC, and dismiss Massey's case with prejudice. Massey objected to the report, but the district court ultimately adopted it in full. Massey appeals the judgment resulting from that decision.

Massey's claim that QCHC is responsible for the allegedly substandard medical treatment he received after he got sick fails because he has not alleged that QCHC had a policy or custom that contributed to the alleged deficiencies in the treatment. In Monell v. Department of Social Services, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978), the Supreme Court held that a state actor "cannot be liable under § 1983 on a respondeat superior theory." Instead, a state actor may be held

liable under § 1983 only "when execution of a government's policy or custom" is responsible for the alleged deprivation of civil rights. Id. at 694, 98 S. Ct. at 2037–38. Monell's "policy or custom" requirement covers QCHC because, as we have held, the requirement "applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates." Buckner v. Toro, 116 F.3d 450, 453 (11th Cir. 1997). Thus, to prevail on his claim against QCHC, Massey must show that QCHC had a policy or custom that caused the deliberate indifference of which he complains. But he has not alleged that such a policy or custom existed. At most, he argues that QCHC is liable because it employed Barefield, Thompson, McArthur, and Gurley. That is the type of respondeat superior theory of liability precluded by Monell.

There is also no basis for Massey's claim that Gurley's and Barefield's diagnosis and treatment of his ailments rose to the level of deliberate indifference. There is a difference between "mere incidents of negligence or malpractice" and deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). The former, "while no cause for commendation, cannot . . . be condemned as the infliction of punishment" in violation of the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 838, 114 S. Ct. 1970, 1979 (1994). The latter, by contrast, is a violation of the Eighth Amendment, but requires the plaintiff to prove that the

6

defendant knew of a serious risk to the plaintiff and affirmatively disregarded it. See McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).  There is no genuine dispute that Gurley and Barefield actively attempted to diagnose and treat Massey.  The treatment they offered may not have been as effective or instantaneous as Massey would have liked, but the bare fact that treatment was ineffectual or not immediately administered does not mean that those responsible for it were deliberately indifferent.  Because the record does not establish a genuine dispute that Gurley and Barefield made a good-faith effort to treat Massey's ailments, summary judgment was appropriate.

Summary judgment was also proper on Massey's claim that QCHC, Gurley, and Barefield were responsible for the allegedly unconstitutional conditions of confinement at the Center.  To support a claim that a person or company is responsible for unconstitutional conditions of confinement, a plaintiff must show, among other things, that the person or company not only knew — actually or constructively — of the dangerous conditions, but knowingly refused to do what was required to ameliorate them.  Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999).  That means Massey must show that QCHC, Gurley, and Barefield: (1) knew or should have known that conditions at the Center were such that inmates were likely to get tuberculosis; and (2) knowingly refrained from making a good faith effort to solve the problem.  There is no evidence in the record that

7

could support either of those required showings, and what evidence there is on the subject undermines Massey's claim. For example, Gurley submitted an affidavit giving several reasons why no one at the Center knew or had reason to know of the risk of a tuberculosis outbreak in the inmate population. In the same affidavit, he described the swift and thorough response brought about by Massey's positive test result. The district court properly granted summary judgment to QCHC, Gurley, and Barefield on Massey's conditions of confinement claim.

That leaves Massey's claims that McArthur and Thompson violated his civil rights by failing to treat his condition with appropriate urgency, claims which the district court dismissed sua sponte. Those claims, too, amount to nothing more than a difference in opinion over the appropriate course of treatment. Massey alleges not that McArthur and Thompson failed to treat him, but that they failed to give him treatment that corresponded to the severity of his ailments. Disputes about the proper course of treatment or the timing of treatment do not give rise to viable § 1983 claims. See Estelle v. Gamble, 429 U.S. 97, 107, 97 S. Ct. 285, 293 (1976). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986). Massey's claims against McArthur and Thompson are all about inadvertence and

8

error, not obduracy, wantonness, or bad faith.  They were therefore properly dismissed for failing to state a valid claim under § 1983.

**AFFIRMED.**